The **FALK CORPORATION**, Appellant,

v.

**TORO MANUFACTURING CORPORATION**, Appellee.

**Patent Appeal No. 9190.**

United States Court of Customs and Patent Appeals.

April 4, 1974.

Rehearing Denied May 23, 1974.

Allan W. Leiser, Milwaukee, Wis., Quarles, Herriott, Clemons, Teschner & Noelke, Milwaukee, Wis., attorney of record, for appellant.

Thomas A. Lennon, Minneapolis, Minn., attorney of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Trademark Trial and Appeal Board, 176 USPQ 221 (1972), sustaining, by a divided vote, an opposition to appellant's application for registration of TORUS as a trademark for "rubber element shaft couplings," serial No. 344,845, filed November 28, 1969. We reverse.

### The Board Opinions

The majority of the board, after reciting five of appellee's registrations of the mark TORO, reviewing its extensive advertising and sales of lawn-care equipment and parts therefor under the mark, and comparing TORO with TORUS, concluded there would be likelihood of confusion or mistake. The dissenting board member said TORO and TORUS do not look or sound sufficiently alike to make confusion, mistake, or deception likely and said the marks have no similarity in meaning.

The briefs of the parties are in agreement that the sole issue in this case is likelihood of confusion within the meaning of section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d). However, that basic issue brings with it certain subsidiary issues.

### Opposer's Mark and Goods

Opposer, Toro Manufacturing Corporation (Toro), makes and sells, under the trademark TORO, a well-known, nationally-distributed line of lawn-care equipment or "turf products" ranging in size and cost from a small edge trimmer to tractor-drawn gang mowers which will cut a 26-foot swath. Toro's expenditures for advertising have climbed from over half a million dollars in 1962–63 to over a million and a half in 1970–71. There can be no question but that TORO is a very well-known mark in its field. The TORO line includes motorized reel, rotary, riding, and tractor-drawn lawnmowers of many kinds and sizes and other equipment such as snow throwers, tillers, brushes, and leaf blowers. Toro services all of this equipment, as is customary in such a business, by supplying replacement parts through a far-flung dealer and distributor organization. Since Toro has been in business for many years, this parts or "after market" business is very large. It is said to include from fourteen to fifteen thousand different parts, apparently including in that number many of the nuts and bolts. Toro's evidence shows that the parts are, like the original equipment, sold under the trademark TORO by applying it to the packing slips, cartons, and labels or gummed tape used to close the shipping containers. When each piece of original equipment is sold, the customer receives with it an owner's manual and a reference drawing and parts list, from which replacement parts can be ordered by part number.

### Applicant Falk's Mark and Goods

Appellant, The Falk Corporation (Falk), seeks to register TORUS as a wordmark for "rubber element shaft couplings." The description of goods in the application as filed was "rubber element couplings." The examiner rejected the application on a registration of TORUSEAL (with a circle design combined with the initial "T") for "gaskets or seals of metal tubing for bolted flanges and flanged joints in housings, pipe lines, and combustion chambers," Reg. No. 576,401, and called for additional information "as to the nature and/or use of applicant's 'rubber element couplings'."[1] In response, Falk amended its description of goods by inserting the word "shaft" and sent to the examiner the items on the following list appearing in the "Remarks" accompanying the amendment (bracketed matter added by us):

■ Bulletin 461–110 [a 16-page catalog entitled "FALK Torus Couplings type WA," with the notice "Copyright 1967 and 1970 The Falk Corporation."]

■ Direct mail piece 680902, "Falk Power Transmission News" ["TORUS COUPLING ISSUE," Copyright 1969, 8 pages of description of the alleged six-year development, operation, and testing of the TORUS coupling.]

■ Advertisement 804 [a double-spread ad, undated, depicting a TORUS coupling in operation.][2]

■ Advertisement D812 [a one-page ad of the TORUS and two other Falk couplings, undated.]

■ Advertisement 2000–9 [actually 20000–9, a 2-page ad of a TORUS and two other Falk couplings, 1 page in full color, undated.]

Items [1]–[5] all bear the Patent Office Mail Room stamp dated "Dec 10 1970," Item [5] was introduced into evidence by opposer in this opposition in the form of a copy (Ex. 17). The other items were not introduced into evidence by anyone during the trial period.

After the submission of this material and the amendment of the description of goods, together with argument, the application was passed to publication by the examiner and this opposition followed.

### OPINION

#### What Is In Evidence

■ A preliminary legal question arises in connection with the determination of what is encompassed by Falk's description of goods. The question is whether we can look at all of the materials which the examiner looked at. It arises because Falk's brief asked us to look at the specimen filed with the application, which includes an exploded view of a Falk rubber element shaft coupling. Toro countered with the contention that it is "not properly of record" and "therefore cannot be considered," quoting from the decision of the Trademark Trial and Appeal Board in M & T

---

1. The examiner said in his action:
  If applicant has any advertisements or promotional material dealing with the instant goods, it is requested that a copy be furnished for the record. See Trademark Rule 2.61(b).
  The cited rule says:
     (b) The Examiner may require the applicant to furnish such information and exhibits as may be reasonably necessary to the proper examination of the application.

2. Among other things, this advertisement states:

What's the Torus? It's Falk's new torsionally flexible coupling that smothers jolts, jerks and shakes before they get into machinery.
  *  *  *  *  *
For more than 30 years, Falk has successfully made and sold other types of rubber element couplings. Now we're adding the Torus coupling for general industrial application. After more than six years of lab torture and life tests, as well as actual field tests on ball mills, runout tables, crushers, centrifugal pumps and conveyors, we're confident that Torus is ready for you.

Chemicals, Inc. v. Stepan Chemical Company, 150 USPQ 570 (1966), as follows:

It is well established, however, that specimens or documentary material submitted with an application cannot be used as evidence in behalf of the party filing them unless identified and introduced in evidence as other exhibits during that party's trial period.

Appellee's quotation ends there but the board opinion continues, saying, "See: Rule 2.126." Toro further cites the decisions of this court in In re Fielder, 471 F.2d 640 (1973), and Rexall Drug Co. v. Manhattan Drug Co., 284 F.2d 391, 48 CCPA 756 (1960). In neither *Fielder* nor *Rexall* did we pass on the question whether papers in a trademark application file are of record in an opposition. *Fielder* was a patent case and we merely refused to consider patents relied on by an applicant which were not of record. In *Rexall* we merely refused to look at third party trademark registrations which were not of record.

We think the question of our right to look at the specimen and the literature submitted to the examiner and contained in the application file of the opposed application is settled in the affirmative by Trademark Rule 2.122, which reads in part as follows:

2.122 *Matters in evidence.* (a) *The files* of the applications or registrations specified in the declaration of interference or in the notice in case of concurrent registration proceedings, *of the application against which an opposition is filed,* and of the registration against which a petition for cancellation or an affirmative defense requesting cancellation is filed, *form part of the record of the proceeding without any action by the parties,* and may be referred to for any relevant and competent purpose. [Emphasis ours.]

Our purpose is to refer to the specimen and the literature submitted to and considered by the examiner to determine, as accurately as we can, what the description of goods means, which is certainly relevant to this proceeding, whatever a "competent purpose" may be. Now what of the *M & T* case and Rule 2.126 which it relied on?

Trademark Rule 2.126 reads:

2.126. *Allegations in application not evidence on behalf of applicant.* The allegation of *dates of use* in the application for registration of the applicant or registrant cannot be used as evidence in behalf of the party making the same nor are exhibits attached to pleadings, or *specimens* in application and registration files, considered as *evidence of use* on behalf of the party who filed them, unless identified and introduced in evidence as other exhibits. [Emphasis ours.]

On the face of it, there appears to be some inconsistency between Rules 2.122 and 2.126.[3] For the purposes of this case, however, it seems sufficient to note that we are looking neither to the specimen nor to the publications as evidence of *dates* of use by applicant or as evidence *of use* but as shedding light on what "rubber element shaft couplings" means. We therefore think that Rule 2.-122 is controlling and that 2.126 is not. We further note that in forwarding the certified transcript of the Patent Office record to this court the Certifying Officer, pursuing the normal procedure, notified us, on behalf of the Commissioner:

Attachments to Amendment, filed December 10, 1970 in Trademark Serial Number 344,845; and Third Party Registrations (55), filed with Notice of Reliance, December 13, 1971; will follow later.

These are deemed to be part of the record as certified, they did follow later,

3. There also appears to be inconsistency between rule 2.126 and rule 2.122(b) with respect to "exhibits attached to pleadings," which might be an opposer's registrations attached to a Notice of Opposition which

Rule 2.122(b) says will be "received in evidence and made part of the record if two copies showing status and title of the printed registration or an order for such copies accompany the opposition * * *."

and we consider them to be part of the "file" of the application referred to in Rule 2.122.

The *M & T* case, which relied on Rule 2.126, cited by appellee, appears to us to be at least partially inconsistent with Rule 2.122. To that extent its ruling is untenable.

### What Goods Are Described by Falk

Looking at the literature submitted to the examiner, as well as the specimen which shows one coupling, considerable light is shed on the nature of the goods described in Falk's application because Falk makes, advertises, and describes a number of different shaft couplings and the literature discusses the shaft coupling problem. From consideration of this material, it appears to us that the goods described are mechanical couplings which couple a driving with a driven shaft, in end-to-end relation, to transmit rotary motion and must contain a rubber element for the purpose of compensating for various types of shaft misalignment, by virtue of the flexibility of the rubber. Thus, a "shaft coupling" couples two rotatable shafts and, of course, rotates with them.

### Appellee's Case

About a year ago we decided a case heavily relied on by Falk, Toro Manufacturing Corp. v. The Gleason Works, 474 F.2d 1401 (1973), in which we affirmed the dismissal of an opposition by Toro to the registration of the trademark TOROID for gears, among other things. There, as here, the board decision, by the same panel, was two to one, but the other way around, the majority saying the words "do not look or sound very much alike." (167 USPQ 315.) Toro argued before us that because its TORO mowers etc. contain gears the goods "become identical." We said:

> There is no indication of record that the TORO mark is used *on gears* and, although appellant contends otherwise, we are not persuaded that there is likelihood of confusion merely because

appellant's lawn mowers and other goods sold under the TORO mark *contain* gears. [Emphasis ours.]

Falk here cites the *Gleason* case in support of its argument that TORO and TORUS are no more alike than were TORO and TOROID, and no more likely to cause confusion.

■ Toro, apparently endeavoring to remedy evidentiary deficiencies it saw in *Gleason*, has here tried to show by evidence that it uses its mark TORO on "the same identical goods" described in appellant's application. It distinguishes this case from *Gleason* on the ground it has made such a showing. To do so Toro produced as a witness its Director of Distribution Control. Among other duties, he was in charge of replacement parts. He was examined by counsel about the owner's manual parts lists supplied with four mowers and was asked to select therefrom anything which was a "flexible coupling." He was not asked, we note, to find any "rubber element shaft couplings," which is Falk's actual goods description.

During the taking of the testimony of Toro's witness on the sale of replacement parts, Falk was not represented and there was, therefore, no cross-examination. While it is not our duty to represent a party who chose not to represent itself, it is our duty to examine the record to determine whether and to what extent the evidence supports the allegations of counsel and the decision of the board which is on appeal. We have to form a judgment on the claim—which is challenged by Falk—that Toro has been selling goods *identical* with those designated in the Falk application, and, if so, the volume of such sales, which the board, uncritically we think, found to amount to over $93,000 in a year. We will now consider what the evidence shows.

The first parts list Toro's witness testified about was for the Toro 21″ Power Greensmower. In it he identified three parts he said constituted a "flexible coupling." Examination of the parts list

and reference drawing shows they are a power takeoff (shaft), a coupling yoke, and a flexible coupling disc through which the shaft is coupled to a pulley. The pulley, in turn, is mounted on the engine drive shaft. We here note, for reasons which will appear, that a *shaft* is not a part of the shaft *coupling*.

The second parts list was for the Toro 76″ Professional mower from which five parts were selected, namely, two "ball studs," a rubber "ball socket," a socket right half, and a socket left half. This connection has the structure of a ball-and-socket joint with a rubber "socket" or covering on the metal ball, being a kind of "flexible coupling" between a ball and something else, but *not* connecting two shafts. The ball studs are fixed into mower frame members. The socket apparently connects to a link, not to a rotating shaft.

The third parts list was again for an earlier model of the same machine as the second and involves similar parts.

The fourth parts list was for the Toro "Super Pro" mower, a 12 H.P. 3-reel unit which cuts an 81″ swath. Selected from its parts as "flexible coupling" components were a shaft assembly, a complete torque limiter, an adjusting stud, a spring, a ball, and a key. It is noted that 4 each of the stud, spring, and ball are required in each unit. They are all parts of the torque limiter assembly which appears to be friction-drive clutch for connecting a shaft to a chain-driven sprocket.

We cannot conclude, as counsel for Toro would have us do, that all of the above-described parts are the "same identical goods" described as "rubber element shaft couplings," when that description is read in the light of appellant's disclosures to the Patent Office. The closest approach appears to be the yoke, disc, and pulley combination found in the 21″ mower first described, which at least couples two shafts, albeit through the engine pulley. While it may be that the other parts found in the second, third, and fourth parts lists

about which the witness testified are "flexible couplings," which is what the witness was asked to look for, we consider that they are not "rubber element shaft couplings," according to Falk's goods description. To that extent we have to disagree with the contention of Toro's counsel that sales of such parts are sales by Toro of "identical goods."

We reach this conclusion on the basis of the parts lists themselves, which Toro put in evidence, and which contain the "reference drawings" and the names of the parts, showing with reasonable clarity what they are, where they are used, and how they function.

What is clear to us from these exhibits and the testimony is that Toro's witness selected as parts coming within Falk's goods description anything that connected a rod or a shaft, whether rotatable or not, and whether containing a rubber element or not, to another member. Many of the parts connect a rod to a metal ball fixed on the end of a stud fastened into a frame member, some of them involving a rubber covering on the ball which gives a degree of flexibility justifying classification as a "flexible coupling." Some of them apparently do not involve any rubber element. The net result is a great exaggeration of the number of "rubber element shaft couplings" sold by Toro. This same exaggeration underlies the asserted dollar amount of Toro's business in this field.

Toro alleges sales of over $93,000 worth of so-called "flexible couplings." This amount was the total taken from a hand-written tabulation by the witness (Exs. 15–A, 15–B) which he said was "a partial list of parts sold by Toro Manufacturing that we consider to be flexible couplings." It shows dollar sales of each of the. listed parts for 1970–71. The witness said it was "a random list of parts selected for this exhibit." It lists many parts other than those selected from the four parts lists put in evidence and described above.

The first thing that detracts from the credibility of the alleged sales of

$93,426.67 of "flexible couplings," however, is the inclusion among such "couplings" of $8,221.52 worth of itemized *shafts and rods.* Assuming that a few of the parts listed are for rubber element shaft couplings, surely sales of the shafts and rods themselves are not sales of couplings. The next thing is that the last 5 items on the list, including the largest dollar item listed, are itemized as "U-Joint" for "Lawn Trac." and "Riders." We are directed to no evidence which explains what these items are, whether or not they connect shafts, or whether they contain rubber elements. They account for $28,931.39 of the total. The list contains a large number of "Ball Joints" for various mowers. We cannot check them all but we note total sales of two ball joint items we can check, part 3–8863 with sales of $7,-223.52 and part 5–3928 with sales of $3,081.00, which are not within Falk's goods description but are ball joints attached to opposite ends of part 5–3927 which is cataloged as a "Rod, Push," (Ex. 5, p. 6). We do not consider such parts to be "rubber element shaft couplings," even should they contain rubber in the ball joints, which seems doubtful since none is indicated in the parts list. Without the aid of cross-examination or the chance of a complete check, the evidence thus shows us over $47,000 worth of items we consider not to be within Falk's goods description. These evidentiary self-contradictions taint the whole computation.

In view of these matters, we cannot accept at face value, as the board seems to have done, the asserted amount of sales by Toro of parts falling within appellant's description of goods. It is apparent to us that the amount is grossly exaggerated by reason of the witness's mistaken assumption as to what Falk's goods description encompasses. Toro's counsel asserted at oral argument that Toro's annual sales of parts is of the order of $6 .million. Feeling, as we do, that the asserted amount of Toro's sales of parts falling within Falk's description of goods must be drastically reduced, such sales were a miniscule part of its total parts sales and were not large sales of "identical" parts, as Toro alleges. So much for getting the evidence in proper perspective as a preliminary to deciding the basic question of whether appellant's use of TORUS as a trademark on its goods would be likely to cause confusion, or mistake, or to deceive.

### Likelihood of Confusion, Etc.

■ Toro made of record, by attachment to its Notice of Opposition, eight registrations. We find it unnecessary to discuss them in detail because none of them makes any reference, in the goods named, either to *parts* of the equipment listed or to *couplings* of any kind. Five of the registrations are of the wordmark TORO, two are for a design representing, in conventionalized form, mounted steer's horns, referred to by Toro as "BULLS HEAD DESIGN." The other registration combines the word TORO and said design. The design mark registrations are irrelevant. Because appellant's goods are not within any of the registrations, Toro cannot prevail merely on the ground that "rubber element shaft couplings" may be contained in some of its machines. Toro v. Gleason, supra. We come, then, to the question whether it has here succeeded in establishing such *use* of the mark TORO, under section 2(d), on goods so related to appellant's goods as to give rise to a likelihood of confusion, etc., taking into account the *circumstances of such use.*

Assuming Toro made sales, prior to appellant's earliest date, of some unknown quantity of couplings within Falk's goods description, we think the controlling factor here, on the issue of likelihood of confusion, is the manner of their sale by Toro. The evidence makes it clear that sales or offers of sale by Toro have been and are only as spare or replacement parts. The purchasers are either users of, repairers of, or dealers in Toro's lawn-care equipment who have a need for a particular part for a particular machine. To determine what shall be purchased, reference must be had to a parts list containing a reference drawing of the machine and identifying parts

numbers keyed thereto. Order for the goods is placed *by part number*. Normally, this order will be for a TORO part and placed through TORO's distribution system with no possibility of confusion as to the source. Toro produced evidence, however, showing the existence of an independent parts distributor, Lawnmower Parts Manufacturing Co., Inc., which sells some parts for TORO lawnmowers. Its catalog shows the method of sale, which is the same as Toro's. Reference drawings of TORO mowers by model name have annexed parts lists keyed to the drawings and listing two numbers, first the seller's number and next Toro's number, headed "Our Part-#" and "Replaces Part #," respectively. It is clear that nobody ordering from this list could be in doubt as to the source of the goods. It is evident that in this category of spare parts merchandising the sales take place without any reference to or reliance on trademarks. Parts are ordered from catalogs by part number from whatever available source the buyer selects—either the original-equipment supplier or one of its distributors, or from an independent competitor of known identity and known *not* to be the maker of the machine for which the part is being ordered. It is simply not a buying-by-brand operation, but buying by a part number which is tied to a source.

As to the marks themselves, we see no point in discussing their similarities, differences, meanings, or lack of meaning to prospective purchasers of the parties' goods. The only important point to note is that the marks are different, so it cannot be said that registration to Falk will in any way interfere with Toro's use of its mark TORO on any goods.[4]

*Conclusion*

Taking into consideration the differences in the marks and the nature of opposer Toro's business in its closest approach to the goods described in Falk's application, namely, the selling of certain replacement parts in the manner above described, we see no likelihood of confusion, mistake, or deception and the decision of the board is therefore reversed.

Reversed.

MILLER, Judge, with whom MARKEY, Chief Judge, joins, dissenting.

The majority's decision appears to rest on two erroneous premises, namely: that, to support a holding that appellant's mark so resembles appellee's mark as to be likely to cause confusion or mistake, the goods of the parties must be identical or interchangeable; and that confusion must be likely with respect to the goods of the *opposer* (appellee).

Thus, it is pointed out that the description of appellant's goods is "rubber element shaft couplings"; whereas, appellee's witness identified parts under the description "flexible coupling." Great emphasis is placed on the fact that appellee's brief argues that the goods are "identical," but the brief also argues prior use of the mark TORO on *"other flexible couplings* and *other forms of coupling devices."* Moreover, nowhere in appellee's notice of opposition is there any allegation that the goods are identical. Rather, appellee alleged that "Many of Opposer's TORO brand products utilize couplings, which are in turn ultimately sold as individual repair parts under the TORO and BULL'S HEAD DESIGN marks"; and that "potential purchasers or users of Applicant's shaft couplings, being well

---

4. In Hardigg Industries, Inc. v. Toro Manufacturing Corp., 173 USPQ 813 (1972), the Trademark Trial and Appeal Board sustained Toro's opposition to the registration of Toro-Pad for plastic pads for absorbing and dissipating shocks, which obviously differs from opposer's mark Toro only in the addition thereto of the descriptive word Pad. We affirmed without a published opinion, 180 USPQ 403 (CCPA 1974).

Rule 5.12(g) of this court, effective January 1, 1974, provides that unpublished *opinions* "shall not be cited as precedent." In referring to our *decision* of affirmance, reported at 180 USPQ 403, we are not citing an *opinion*. In these matters it is essential to distinguish between *decisions* (affirmed, reversed, etc.) and the *opinion* giving the supporting rationale. See In re Facius, 408 F.2d 1396, 56 CCPA 1348 (1969), footnote 9.

acquainted with Opposer's marks and products, are likely to assume that Applicant's products originate with, or are related to, Opposer." Merely because the evidence of record does not support a finding that the goods of the parties are identical or interchangeable does not mean that the evidence fails to sustain these other allegations. Notwithstanding that the goods of the parties are not identical and even when there are differences between the marks, this court has not hesitated to find a likelihood of confusion or mistake. In re Knapp-Monarch Company, 296 F.2d 230, 49 CCPA 779 (1961); Schenley Industries, Inc. v. Fournier, Inc., 357 F.2d 395, 53 CCPA 1046 (1966); Ford Motor Co. v. Sherman Ford, Jr., d.b.a. Ford Records, 462 F.2d 1405, 59 CCPA 1124 (1972).

Contrary to the majority's statement that the question is whether appellee "has here succeeded in establishing such *use* of the mark TORO, under section 2(d), on goods so related to appellant's goods as to give rise to a likelihood of confusion, etc., taking into account the *circumstances of such use*," section 2(d) refers to refusal of registration of a mark which, "when applied to the goods of the applicant," is likely to cause confusion or mistake. In the absence of some limitation in appellant's application or in appellee's registration, the evidence here clearly shows that the goods of the parties (couplings) are similar. This raises the presumption that the goods move in the same channels of trade. Esso Standard Oil Company v. Bigelow-Clark, Inc., 266 F.2d 804, 46 CCPA 883 (1959). Appellant failed to come forward with any evidence to rebut this presumption, and the specimen and literature considered by the examiner certainly do not rebut this presumption. Although TORO parts are sold as spares or replacements under parts numbers, so that TORUS couplings would probably not be purchased for these because of confusion or mistake, the movement of these goods in the same channels of trade (primarily independent hardware

stores) lays a foundation for confusion or mistake on the part of *those who buy TORUS couplings* in attributing the source thereof to TORO, and this is a necessary question to be decided by the court.

I agree with the majority of the board that the record establishes TORO as a strong mark for tractors, mowers, related machinery and parts thereof; and that the marks TORO and TORUS are sufficiently similar in sound and appearance to establish that there would be a likelihood of confusion or mistake when used contemporaneously on the similar goods of the parties. See Paula Payne Products Company v. Johnson Publishing Company, Inc., 473 F.2d 901 (CCPA 1973).

The decision of the Trademark Trial and Appeal Board should be affirmed.