NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MICRO MOBIO CORPORATION,**
*Appellant*

**v.**

**GENERAL MOTORS, LLC,**
*Appellee*

---

2021-1591

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 92068218.

---

Decided: October 12, 2021

---

CHRISTOPHER HORGAN, ROARK IP, San Jose, CA, for appellant.

DENNIS J. ABDELNOUR, Honigman LLP, Chicago, IL, for appellee. Also represented by MARY HYDE.

---

Before MOORE, *Chief Judge*, BRYSON and PROST, *Circuit Judges*.

BRYSON, *Circuit Judge.*

Appellant Micro Mobio Corporation sought to cancel a trademark registration owned by appellee General Motors, LLC, ("GM") based on Micro Mobio's prior use and registration of a similar mark. The Trademark Trial and Appeal Board ("TTAB" or "Board") denied the petition for cancellation. We affirm.

I

GM owns Registration No. 5387518 for the standard character mark SUPER CRUISE, which is registered on the Principal Register for "Computer software, cameras, ultrasonic sensors, global positioning system and radar object detectors for the semi-autonomous driving of motor vehicles." Micro Mobio owns a prior registration, Registration No. 3972396, for the mark SUPERCRUISE for "Semiconductor devices, computer hardware, and computer software for use in design, simulation and control of electronic circuits and antenna, receiving and transmitting signals, and modulation, demodulation and media access control in voice and data communications."

Micro Mobio petitioned to cancel GM's registration based on Micro Mobio's prior use and registration of its SUPERCRUISE mark. Following a trial, the TTAB issued a detailed opinion in which it rejected Micro Mobio's contention that GM's use of the SUPER CRUISE mark would give rise to a likelihood of confusion under section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d). In analyzing that question, the Board reviewed the so-called *DuPont* factors that have traditionally been used in addressing the likelihood of confusion. *See In re E.I. DuPont De Nemours & Co.*, 476 F.2d 1357, 1361 (CCPA 1973).

As an initial matter, the TTAB treated the two marks as similar, finding that they were identical but for the space in GM's mark between SUPER and CRUISE. Given that the appearance, sound, connotation, and commercial

appearance of the two marks were essentially the same, the Board regarded the space between SUPER and CRUISE in GM's mark as inconsequential.  J.A. 12.

Turning to the strength of Micro Mobio's mark, the Board presumed the mark to be distinctive.  But the Board rejected Micro Mobio's argument that the mark was arbitrary or fanciful.  Instead, it concluded that the mark was suggestive and thus not as strong as an arbitrary or fanciful mark.  *Id.* at 13–14.  In making that finding, the Board noted that one definition of the term "cruise" is "to move or proceed speedily, smoothly or effortlessly," and that the word "super" is a superlative meaning "of high grade or quality"; "very large or powerful"; or "exhibiting the characteristics of its type to an extreme or excessive degree." *Id.* at 14.  As so interpreted, the Board found the mark to be "highly suggestive of [Micro Mobio's] goods, suggesting that they facilitate the extremely quick and smooth receipt and transfer of signals."  *Id.*

As to the commercial strength or fame of Micro Mobio's mark, the Board looked to Micro Mobio's sales and advertising expenditures and found them "not particularly impressive."  *Id.* at 15.  Micro Mobio offered no market share evidence, and it claimed what the Board found were only "modest" promotional efforts.  *Id.*  The Board therefore found the "commercial strength or fame" of the mark to be neutral.  *Id.*

On the important factor of the similarity or dissimilarity of the goods, Micro Mobio argued that its goods, as described in its registration, were similar to the goods described in GM's registration.  In particular, Micro Mobio argued that GM's Super Cruise system uses semiconductors, computer hardware, and computer software, and that the computer software used in GM's Super Cruise system would include software that controls signal transmission among the system components.  The Board, however, rejected Micro Mobio's argument, holding that "the mere fact

that [GM's] goods for the semi-autonomous driving of motor vehicles may incorporate or use semiconductors, computer hardware, and/or computer software" does not mean that GM's goods are the same as Micro Mobio's goods or that the parties' products "are related for likelihood of confusion purposes." *Id.* at 22. The fact that computer components such as Micro Mobio's goods may be incorporated into GM's system, the Board added, "is not, in itself, a sufficient basis for finding the parties' goods related." *Id.* at 23.

The Board also rejected Micro Mobio's argument that its goods are complementary to GM's Super Cruise product because GM's system requires a connectivity platform to operate. The Board explained that goods are not complementary simply because "one product is incorporated as a part in another product." *Id.* at 24. Instead, the Board stated, "complementary goods are those that are likely to be purchased and used together by the same purchasers." *Id.* Because the two parties' goods are not "such that they could be encountered by the same purchasers under circumstances that could give rise to the mistaken belief that the goods come from a common source," the Board found that the evidence did not support a finding of a likelihood of confusion. *Id.* at 25.

The Board next found that there was no meaningful overlap between the channels of trade and the class of customers for the two parties' goods. While both parties may interface with wireless carriers, the Board held, "neither party targets its products to wireless carriers." *Id.* at 29. With respect to the testimony from Micro Mobio's expert that confusion between the goods would be likely to occur among persons who repair automobiles, the Board noted that Micro Mobio's SuperCruise products are not automotive parts and that Micro Mobio does not make any Super-Cruise-branded systems for cars. *Id.* at 27.

The conditions of sale and the sophistication of purchasers, the Board found, also cut against the likelihood of confusion. Automobiles are expensive, and GM's Super Cruise option retails for about $5000. J.A. 30. As such, the Board noted that consumers are likely to purchase the Super Cruise system "only after careful thought and consideration." J.A. 30. As for Micro Mobio's products, the Board found that they were sold through "very high-level marketing," primarily to sophisticated consumers. *Id.* That factor, the Board held, also did not favor finding a likelihood of confusion. *Id.*

Finally, the Board found no evidence of actual confusion between the parties' products, no market interface between the parties, and no more than a *de minimis* level of potential confusion. After balancing all the *DuPont* factors, the Board found no likelihood of confusion and therefore denied the petition to cancel GM's registration. *Id.* at 31–34.

## II

Micro Mobio raises seven issues in its challenge to the TTAB's decision, none of which have merit.

1. Micro Mobio's first argument is that the Board erred in treating its mark as suggestive, rather than arbitrary or fanciful. Micro Mobio bases its argument on testimony from one of its executives, who claimed that the name was chosen simply because he and his boss "liked the sound of the mark." *Id.* at 357. But the Board found that the name was "highly suggestive" of Micro Mobio's goods, indicating that the goods "facilitate the extremely quick and smooth receipt and transfer of signals." *Id.* at 14. Contrary to Micro Mobio's contention, a party cannot convert a suggestive or descriptive mark into an arbitrary mark—thereby gaining a greater right to monopolize the use of that term— simply by asserting that the term was not selected for its suggestive or descriptive meaning. *See In re Champion Int'l Corp.*, 183 U.S.P.Q. 318, 320 (T.T.A.B. 1974)

(concluding that a mark was descriptive, and disregarding "the various meanings attributed to [the mark] by applicant").

In challenging the Board's use of a dictionary definition of the term "cruise," Micro Mobio contends that GM should not have been permitted to argue for a definition of "cruise" that differed from the one GM used in its registration: "to sail from place to place, as for pleasure or in search of something"; or "to ride about in a similar manner." Appellant's Br. 9. The definition of "cruise" the Board used in analyzing Micro Mobio's mark was based on an alternative definition of the term. Micro Mobio offers no support for its contention that a finding that a mark is suggestive cannot be based on one of several different definitions of a term. Nor is there any force to Micro Mobio's suggestion that it was impermissible for GM to advocate in favor of a definition different from the one it used in its registration. If a mark is suggestive under any of several definitions of a term used in the mark, it is not entitled to the enhanced status that attaches to marks that are arbitrary or fanciful. That both GM's mark and Micro Mobio's mark are suggestive in slightly different ways does not make Micro Mobio's mark any less suggestive or otherwise enhance the strength of the mark.

2. Next, Micro Mobio argues that the Board committed legal error by overstating the degree to which the goods in question must be similar or related when the marks in question are the same. Micro Mobio argues that it is only necessary that there be a "viable relationship" between the goods to find a likelihood of confusion when identical marks are involved. *Id.* at 11–12.

There is no force to Micro Mobio's argument. The Board explained that the proper legal test for the similarity of goods when the marks are the same is that the evidence must establish that the goods are "related in some manner," or that "the conditions surrounding their marketing

are such, that they could be encountered by the same purchasers under circumstances that could give rise to the mistaken belief that the goods come from a common source." J.A. 16. Micro Mobio does not explain why the Board's statement that the goods must be "related in some manner" is more restrictive than Micro Mobio's "viable relationship" test.[1] Moreover, the Board explained that the proper test is based on the rationale of the requirement of relatedness—that goods are regarded as related if the goods are likely to be encountered by same purchasers, who would be led to believe the goods came from the same source. The Board thus committed no legal error in setting out the proper test for relatedness.

3. Micro Mobio argues at some length that the Board committed a factual error by misinterpreting the terms "computer hardware" and "computer software" in Micro Mobio's registration. Micro Mobio's discussion of that issue is fundamentally flawed. In essence, Micro Mobio contends that its goods are related to GM's Super Cruise product

---

[1]    Micro Mobio cites *In re Concordia International Forwarding Corp.*, 222 U.S.P.Q. 355 (T.T.A.B. 1983), as support for employing a "viable relationship" test for determining when identical marks give rise to the likelihood of confusion. *Concordia*, however, applied the same test that the Board applied in this case. The Board noted that the mark in *Concordia* "may be encountered by the same persons," and that the record in that case indicated that such persons were actually aware of the services of both parties. *Concordia*, 222 U.S.P.Q. at 356; *see also In re Opus One Inc.*, 60 U.S.P.Q.2d 1812, 1815 (T.T.A.B. 2001) ("[T]he requisite 'viable' relationship . . . must consist of 'something more' than the fact that the registrant uses the mark on a food or beverage item (wine) and the applicant uses the mark in connection with restaurant services.").

because GM's product contains and depends on computer hardware and software.[2]

That is the wrong inquiry. As the Board pointed out, the relevant question is "whether the conditions surrounding the marketing of the parties' goods are such that they could be encountered by the same purchasers under circumstances that could give rise to the mistaken belief that the goods come from a common source." J.A. 25 (citing *Hewlett-Packard Co. v. Packard Press Inc.*, 281 F.3d 1261 (Fed. Cir. 2002)). Nor is Micro Mobio correct that the goods can be regarded as complementary simply because GM's Super Cruise system uses goods such as Micro Mobio's to function. As the Board has explained, "Given the ubiquitous use of computers in all aspects of business in the United States today, this Board and its reviewing Court have rejected the view that a relationship exists between goods and services simply because each involves the use of computers." *Elec. Data Sys. Corp. v. EDSA Micro Corp.*, 23 U.S.P.Q.2d 1460, 1463 (T.T.A.B. 1992) (citing *Octocom Sys. Inc. v. Houston Computs. Servs. Inc.*, 918 F.2d 937 (Fed. Cir. 1990)). The same is true of products that use another party's goods in order to function. *See Falk Corp. v. Toro Mfg. Corp.*, 493 F.2d 1372, 1378 (CCPA 1974) (opposer could not "prevail merely on the ground that [applicant's] 'rubber element shaft couplings' may be contained in some of its machines"). The Board's determination that Micro

---

[2] Micro Mobio makes a related argument that the items listed in GM's goods identification (e.g., cameras, ultrasonic sensors, etc.) *are* computer hardware, making the goods related. Although the exact boundary between "computer hardware" and other components that contain or interact with computers is somewhat indefinite, the Board's finding that GM's goods fall outside the "plain meaning" of "computer hardware" is supported by substantial evidence. *See* J.A. 21–22.

Mobio's SuperCruise products were not related to GM's Super Cruise system was thus based on a correct legal standard and supported by substantial evidence.

4.  Micro Mobio next contends that the Board failed to give proper weight to record evidence such as prior registrations, third-party websites, and newspaper articles that Micro Mobio introduced to show that the parties' goods are complementary.  The Board found Micro Mobio's showing unpersuasive because the evidence offered by Micro Mobio did not suggest that it is common for third parties to offer both semi-autonomous driving systems and products such as Micro Mobio's under the same mark.  J.A. 25 n.51.  None of the third-party registrations support Micro Mobio's argument on that issue, nor do the websites or newspaper articles on which Micro Mobio relies.  That evidence merely supports the point that semi-autonomous driving systems require connectivity to function, which is not proof that the goods are related or complementary for purposes of assessing the likelihood of confusion.

5.  Micro Mobio argues that in addressing the issue of distinct channels of trade and classes of purchasers, the Board erred by not applying the legal presumption that identical goods travel in the same channels of trade to the same class of purchasers.  That presumption does not apply here, however, because the presumption applies only when the products are identical.  *See Zheng Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1372–73 (Fed. Cir. 2018).  The Board found that the products at issue in this case are quite dissimilar and thus the presumption of overlapping trade channels or classes of purchasers does not apply.  GM's products, the Board found, are sold through their own dealerships to car buyers.  Micro Mobio's products, by contrast, are sold to original equipment manufacturers or individual engineers in the wireless and mobile phone industry.  The Board's finding of a lack of overlap between the parties' customers and trade channels is supported by substantial evidence.

6. Next, Micro Mobio claims that the Board made a factual error regarding the potential for post-sale confusion when it stated that Micro Mobio's goods are not auto parts. The Board's statement was not erroneous. While some of Micro Mobio's products may be used in products that find their way into the vehicular market, that does not make those goods "auto parts," such as to give rise to a likelihood of confusion as to the source of the parties' goods. Moreover, as GM points out, the evidence showed that GM does not sell its Super Cruise system apart from the Cadillac vehicles in which the system is installed, and there was no evidence that Micro Mobio sells system parts that would be used to repair or service vehicles featuring the Super Cruise system. Substantial evidence thus supports the Board's conclusion that there is no likelihood of post-sale confusion between the parties' products.

7. Finally, Micro Mobio argues that the Board was mistaken when it found the extent of potential confusion to be *de minimis*. Micro Mobio contends that the goods are complementary because every time there is a sale of a semi-autonomous driving system, there is a sale of a connectivity module as part of the system. Therefore, Micro Mobio asserts, "the potential for confusion would be possible in every sale of GM's products and cannot be deemed to be de minimis." Appellant's Br. 28. Micro Mobio also contends that the Board improperly relied on extrinsic evidence in making its assessment of the potential confusion between the parties' products and that the Board disregarded the fact that the two marks are identical.

As noted above, the fact that goods such as the computer components that Micro Mobio sells are found in products of all kinds, such as washing machines, watches, toys, and medical instruments, does not mean that computer components of all types are complementary products for each of those devices for purposes of trademark law. As to the Board's use of extrinsic evidence, it was perfectly permissible for the Board to consider the realities of the

marketplace in assessing the potential for future confusion as to the source of the parties' products. And it is incorrect to say that the Board disregarded the fact that the marks were identical. The Board began its analysis by so finding, and its analysis of the evidence after that point was directed to determining whether, as it found, there was no likelihood of confusion between the parties' products notwithstanding the identity of the marks. The Board's finding as to the potential for further confusion is therefore supported by substantial evidence.

Finding no merit to any of Micro Mobio's factual or legal challenges to the TTAB's analysis, we uphold the decision denying Micro Mobio's petition to cancel GM's registration.

**AFFIRMED**